# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                          )
                                                )
PITTSBURGH CORNING CORP.,                        )
                                                )
                        Debtor.                  )
                                                )
-------------------------------------------------
CERTAIN UNDERWRITERS AT LLOYD'S,                 )   Civil Action No.: 04-1814
LONDON, CERTAIN LONDON MARKET                    )
INSURANCE CO., MT. MCKINLEY                       )    (Appeal related to Bankruptcy
INSURANCE CO., and EVEREST                        )     Case No. 00-22876-JKF)
REINSURANCE CO.,                                 )
                                                )
                        Appellants,              )
                                                )
            v.                                   )
                                                )
PITTSBURGH CORNING CORP., et al.,                )
                                                )
                        Appellees.               )

MEMORANDUM ORDER

CONTI, District Judge

        This is an appeal from an order of the bankruptcy court entered on October 22, 2004

(the "2019 Order"), in the bankruptcy cases commenced by Pittsburgh Corning Corporation

(the "debtor") and its affiliates, which are jointly administered at Bankruptcy Case No. 00-

22876-JFC.  In the 2019 Order the bankruptcy court required compliance with Rule 2019 of

the Federal Rules of Bankruptcy Procedure ("Rule 2019").  Under that rule an entity acting in a

representative capacity for more than one creditor or equity security holder must file with the

court a verified statement containing certain kinds of information.  The bankruptcy court

initially required strict compliance with Rule 2019, but in the 2019 Order, which revised prior orders, the bankruptcy court permitted the modification of the filing requirements of that rule by authorizing, among other things, that (a) exemplars of certain empowering documents, i,e, the instrument whereby the entity is empowered to act on behalf of the creditor or court security holder, could be filed rather than filing the empowering documents, (b) the exhibits to the verified statement filed under Rule 2019 would not be scanned and (c) access to the exhibits would be provided to parties "upon motion to and order of the Court." 2019 Order at 2. The debtor and the United States Trustee were to be served with copies of the exhibits and they were required to "keep such exhibits confidential and shall not release the exhibits to any party without further Order of Court." 2019 Order at 3.

This appeal was filed by Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Mt. McKinley Insurance Company and Everest Reinsurance Company (collectively, the "appellants"). Appellants assert that the bankruptcy court erred by entering the Rule 2019 Order because the bankruptcy court's order directly contradicts Rule 2019(a). They argue that the requirements of that rule are mandatory and cannot be modified by a bankruptcy court. Appellants also argue that by requiring the exhibits not to be scanned and by permitting access only upon motion and order of court, the bankruptcy court violated 11 U.S.C. § 107 (codification of public right of access to papers filed in bankruptcy court), as well as the public's common law right of access to judicial records and the public's right of access to courts under the First Amendment to the United States Constitution.

Pittsburgh Corning Corporation, the Official Committee of Asbestos Creditors, the Future Claimant's Representative, Baron & Budd, P.C., and Silber Pearlman LLP (collectively,

the "appellees") filed briefs in opposition. Among other things, appellees assert that appellants lack standing to appeal the 2019 Order and appellees Baron & Budd, P.C., and Silber Pearlman LLP also argue that the matter is not ripe for appeal.

The court will dismiss this appeal on justiciability grounds by reason of appellants' lack of standing or, in the alternative, because the matter is not ripe.

## Background

This appeal was filed by appellants who are insurers of the debtor, but are not holders of any claims against the debtor or equity interests in the debtor. In its bankruptcy schedules, the debtor listed several hundred thousand claims brought by claimants alleging injury due to exposure to the debtor's asbestos containing products. Those claimants are represented by approximately 150 law firms, some of which represent numerous claimants. Appellants were permitted to appear and be heard in the debtor's bankruptcy case with respect to the entry of the 2019 Order. Indeed, it was appellants who requested that the bankruptcy court order that Rule 2019[1] be complied with by the various law firms representing claimants who have claims

---

[1]Federal Rule of Bankruptcy Procedure 2019 provides in relevant part:

(a) Data required. In a chapter 9 municipality or chapter 11 reorganization case, except with respect to a committee appointed pursuant to § 1102 or 1114 of the Code, every entity or committee representing more than one creditor or equity security holder and, unless otherwise directed by the court, every indenture trustee, shall file a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity or indenture trustee, and, in the case of a committee, the name or names of

relating to alleged exposure to asbestos.[2]  When appellants raised concerns regarding the

failure of various law firms representing numerous asbestos claimants to comply with Rule

2019 the bankruptcy court noted during a hearing held on August 27, 2004:

> [E]verybody who contends that they represent a creditor in the case and
> represents more than one, must comply with this rule.  Period, end of
> story.  People have asked for this rule, the rule is there, it's mandatory,
> I've done some research, I can't see any case that has said that it isn't
> mandatory, therefore, I'm simply – I've entered it in all of the cases, it's
> going to be my rule of thumb from now on, I am sorry, it's onerous, I
> think it's onerous, I don't know why Congress made it this onerous,
> Congress did it, not me.  I'm going to do what Congress told me to do.
> So, that's just the way it is.

Transcript of hearing held on August 27, 2004 ("8/27/04 Tr.") at 22.

---

> the entity or entities at whose instance, directly or indirectly, the
> employment was arranged or the committee was organized or agreed to
> act; and (4) with reference to the time of the employment of the entity, the
> organization or formation of the committee, or the appearance in the case
> of any indenture trustee, the amounts of claims or interests owned by the
> entity, the members of the committee or the indenture trustee, the times
> when acquired, the amounts paid therefor, and any sales or other
> disposition thereof. The statement shall include a copy of the instrument, if
> any, whereby the entity, committee, or indenture trustee is empowered to
> act on behalf of creditors or equity security holders. A supplemental
> statement shall be filed promptly, setting forth any material changes in the
> facts contained in the statement filed pursuant to this subdivision.

[2]The issue of compliance with Rule 2019 was also raised in at least three bankruptcy
cases filed in the United States Bankruptcy Court for the District of Delaware at bankruptcy
cases numbers 02-10429 (Kaiser Aluminum Corp., et al., debtors), 04-11300 (The Flintkote
Co., et al., debtors) and 04-12440 (The Flintkote Co., et al, debtors) (collectively the
"Delaware cases"), which are  pending before the same bankruptcy judge presiding over the
instant bankruptcy case.  Apparently the question of compliance with Rule 2019 had not been
commonly raised in bankruptcy cases.  In the Delaware cases the bankruptcy court entered an
order identical to the 2019 Order entered in this case.  At least two appellants in this case also
were heard in the Delaware cases and raised similar objections before the bankruptcy court and
the district court.  This court may take judicial notice of the matters of record in the Delaware
cases.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir.
1988).

The bankruptcy court continued the August 27, 2004 hearing until September 23, 2004 in order to amend what it would require for compliance with Rule 2019. At the hearing held on September 23, 2004, the bankruptcy court noted that the exhibits or attachments to the Rule 2019 statement could be filed on a CD and "made available for access by somebody who has need or reason to ask for it." Transcript of hearing held on September 23, 2004 ("9/23/04 Tr.") at 18. The bankruptcy court determined to not make the exhibits accessible because of concerns about having information relating to an individual's illness being disclosed on the public record. Id. at 19. Counsel for certain appellants noted that they wanted access to the data "through an officer of the court, not through a party that has an interest in keeping it secret." Id. at 55. The bankruptcy court and that counsel engaged in the following colloquy on the record:

| | |
|---|---|
| Bankruptcy court: | Well, I thought when you were talking about putting it on the public docket, that you want this information docketed. |
| Counsel for certain appellants: | No, Your Honor. As long as we get it we have no interest in that as long as we can get the information. . . . |
| Bankruptcy court: | All right. Well, whether you can get it or not, I'm [not] [sic] making a finding about right now. But the mechanism by which parties can get it, is what I'm addressing. |
| Counsel for certain appellants: | All right, Your Honor, that's fine. Again, we will want to be heard on that at the appropriate time. |

Id.

Prior to the entry of the 2019 Order requiring filing of statements pursuant to Rule 2019, the bankruptcy court on October 6, 2004 held a hearing in the Delaware cases during

5

which counsel for certain appellants was present representing the same appellants with respect to similar issues relating to compliance with Rule 2019. At that hearing, counsel for certain appellants argued that by permitting the exhibits to be confidential the bankruptcy court failed to comply with Rule 2019 because those documents are matters of public record that should be open to examination. Transcript of hearing held on October 6, 2004 ("10/6/04 Tr.") at 29. In response to that argument, the bankruptcy court recognized that:

> [I] think that there is a certain level of public access which can be provided and maybe it's for another day. Frankly I'd like to get the statements filed first and then worry about how to get access to them, because right know I don't even have them filed. So I think that ought to be the first step. And I'll throw this out. I'm not making a ruling, I'm throwing it out for people to discuss.

Id. at 30. The bankruptcy court also noted:

> If you want to raise access in a separate motion later frankly, you know, I think I'd prefer to deal with it then. I don't want at this point say [sic] you have no right to access or that you have a right to access, I just want to get the 2019 statements filed of record first and see what we're dealing with because right now I don't know.

Id. at 33. Counsel for certain appellants argued:

> We, as parties in interest, are entitled to this data. I think at some point, Your Honor, we need to get a clarification about what the Court is going to do with respect to our access. Because if there's an appeal by either of the plaintiff's [sic] lawyers or by us from the entry of this order or in our case access to the data that appeal might be entirely mooted out and unnecessary if the Court would indicate to us that we could get access to this data for the purposes of this litigation.

Id. at 34. The bankruptcy court responded:

> Well, I think that it was not just your clients, but anyone who wants access to the date [sic] has to file a motion and I'll have a hearing with respect to that access. That's what I intend to do. So I'm not saying you have or you don't have it. At this point in time I simply want to get the

6

> statements filed of record and then if somebody wants access I think it's appropriate to ask the Court for it because of the privacy concerns I've raised.  I don't think that creates an undue burden especially in these cases where you folks are here every month like clockwork in number of cases.  So I really don't think that's an undue burden on any party in interest in the case.  And that's not making a finding that your clients are parties in interest just that you contend your party's an [sic] interest and if you are I think you've got open door access to the Court.  So I think the order as crafted provides that opportunity and that should be sufficient to get the issue raised later in a timely fashion.

Id. at 34-35.  When counsel for another party in interest raised similar concerns the bankruptcy

court again noted that the court was not going to address the issue at that time:

> This order provides that if you want it you file a motion.  That's the last time I'm going to say it.  If you want it file a motion and I'll deal with it in that context.  I'm not going to provide access at this point in time.  All I'm going to do now is require the statements to be filed.  I'll figure out the access rules when you folks properly tee up a motion, not hit me with it cold on this.

Id. at 40.  When again faced with the issue of access the bankruptcy court stated:

> I'm not making any information available to the litigants absent a court order when I get a motion filed by a party.  I will schedule and have the debtors' counsels schedule all such motions.  I may determine that it's appropriate, I may not, because I don't know.  I haven't been faced with those motions right now.

Id. at 50.  The court also noted:

> This order, in my view, does everything and probably more than it needs to do.  It provides for protection for the parties' rights to ask us this information by simply filing a motion with this Court telling me why you want it.  And I don't think that's inappropriate.  The problem that the Courts wrestle with with electronic case filing is just that.  Everything gets spread on the public docket and that is not appropriate.  That's not what the electronic case filing system was intended to do where privacy concerns are involved.  It was intended to make access to relevant information more widely available to parties.

> I agree, that's part of what the system is all about.  But it seems to me that requiring somebody to show me how the information is necessary, relevant, whatever term you wish to choose in a motion is not violating anybody's substantial rights.  As I said earlier there isn't one of your clients who hasn't appeared almost every single month in all of these cases.  So I don't think it's an undue burden.

Id. at 55.

After the October 6, 2004 hearing,  held in connection with the Delaware cases, the bankruptcy court on October 22, 2004 entered the 2019 Order.  Appellants filed a timely notice of appeal from that order on November 1, 2004.

### **Standard of Review**

This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a).  The court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law under a *de novo* standard.  In re: Sharon Steel Corp., 871 F.2d 1217, 1222-23 (3d Cir. 1989).  If a party lacks standing to appeal from an order, the appeal must be dismissed.  See Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 739 (3d Cir. 1995) (contentions relating to the merits of an underlying order need not be addressed if a party lacks standing).  If a matter is not ripe for appeal, the appeal must also be dismissed.  See Wyatt v. Gov't of the V.I., 385 F.3d 801 (3d Cir. 2004) (declaratory judgment case dismissed on ripeness grounds).[3]

---

[3]Appellees also assert that the appeal is flawed because the order appealed from was not final.  Finality, however, has a broad concept in connection with an appeal from a bankruptcy court.  See In re: Owens Corning, 419 F.3d 195, 203 (3d Cir. 2005) (citing Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000)).

### Discussion

The questions of standing and ripeness are threshold matters which must be determined as they affect the jurisdiction of this court to hear the appeal.  See In re Combustion Engineering Inc., 391 F.3d 190 (3d Cir. 2004) (standing); Philadelphia Fed'n of Teachers, Local 3 v. Ridge, 150 F.3d 319, 322-23 (3d Cir. 1998) (ripeness); see also 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.20 at 50 (2d ed. 1984) (standing and ripeness are categories of justiciability).

### I.    Standing

#### a.  "Aggrieved Persons"

The United States Court of Appeals for the Third Circuit in Combustion Engineering addressed the issue of standing in connection with an appeal in a bankruptcy case.  The court of appeals noted:

> Standing to appeal in a bankruptcy case is limited to "persons aggrieved" by an order of the bankruptcy court. . . . Originally set forth in the Bankruptcy Act of 1898, the "persons aggrieved" test now exists as a prudential standing requirement that limits bankruptcy appeals to persons "whose rights or interests are 'directly and adversely affected pecuniarily' by an order or decree of the bankruptcy court.". . . "[P]erson[s] aggrieved" must show the order of the bankruptcy court "diminishes their property, increases their burdens, or impairs their rights.". . .   Whether someone is a person aggrieved is normally a question of fact.

Combustion Engineering, 391 F.3d  at 214.  The court of appeals linked standing to appeal an order of a bankruptcy court to pecuniary interests that are directly affected by the bankruptcy court's order.  In Combustion Engineering the court of appeals dealt with the standing of various insurers similar to appellants in this case and the court of appeals commented:  "[t]he

question is not whether [the Plan] impaired the claims of insurers but whether it 'diminishes their property, increases their burdens or impairs their rights.'" Id. at 218 (quoting In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir. 2000)).

Since standing is a threshold matter the court must determine whether the appellants are "persons aggrieved" and in that regard must determine whether the order being appealed from "diminishes their property, increases their burdens or impairs their rights." Id. Here, appellants raise two matters which they argue satisfy that requirement. First, they assert that the order being appealed would require them to file a motion in the bankruptcy court to obtain access to the information they believe should be publically available. Since that requirement arguably imposes a financial burden by reason of the costs and expenses appellants would incur in filing and being heard on the motion, they assert that they have standing as "persons aggrieved." Second, appellants argue that they have a common law right and a First Amendment right of public access to the information which are impaired by an order that permits access only upon a motion and order of the court. They argue that the confidentiality protection afforded by the bankruptcy court to the exhibits denies them the right of public access to which they are entitled. The court will address each of those arguments.

### b.)     Financial burden relative to filing a motion

Appellants argue that having to file a motion to obtain access to certain information directly or adversely affects their pecuniary interests. The bankruptcy court in this case felt that the filing of a motion was not an undue burden on parties, like appellants, who were regularly appearing before the court. The costs and expenses of filing a motion in the context of the instant case where the parties frequently appear and file objections with the

10

bankruptcy court does not rise to the level of having a direct and adverse affect on their financial interests. In <u>Certain Underwriters at Lloyd's, London v. Future Asbestos Claim Representatives (In re Kaiser Aluminum Corp.)</u>, 327 B.R. 554 (Bankr. D.Del. 2005), the district court considered the same issues raised by two appellants, Certain Underwriters at Lloyds, London and Certain London Market Insurance Companies, with respect to the same form of 2019 Order entered by the bankruptcy court in the Delaware cases. The orders in those cases were entered on October 22, 2004 and October 25, 2004. <u>Id.</u> at 557.

In <u>Certain Underwriters</u> the insurance companies contended that they would "incur a financial" impact because of having to file a motion to obtain access to the information the bankruptcy court was requiring to be maintained confidential. The district court held that the kind of financial interest asserted by appellants was not "the type of direct, pecuniary interest contemplated by the 'aggrieved person' test. These incidental costs apply to anyone seeking access to the Rule 2019 information, and if this injury were enough, it would confer standing on anyone to challenge the Rule 2019 orders." <u>Id.</u> at 558-59. This court likewise finds that the pecuniary concerns raised by appellants in this case do not support a finding that they meet the "aggrieved persons" test.

    c.    **<u>Right of access under the common law and the First Amendment to the United States Constitution</u>**

The second argument advanced by appellants to support their standing as "aggrieved persons" is that the challenged order precludes their access to information which should be a matter of public record pursuant to 11 U.S.C. § 107. That section provides as follows:

### § 107. Public access to papers

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may--

> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

With respect to the standing argument appellants assert that the bankruptcy court improperly failed to order compliance with section 107 of the Bankruptcy Code. 11 U.S.C. § 107. Appellants argue that Rule 2019 requires that statements be filed with the court and that under section 107 those statements are a matter of public record. If any party, however, could raise on appeal an argument with respect to noncompliance with a Federal Rule of Bankruptcy Procedure or a section of the Bankruptcy Code, the number of appeals would be potentially dramatically increased and permitting appeals in those circumstances would not be consistent with the prudential approach to standing recognized by the United States Court of Appeals for the Third Circuit in its application of the "aggrieved persons" test. Appellate standing cannot be based merely on a bankruptcy court's failure to require compliance with a bankruptcy rule or provision of the Bankruptcy Code.

Notwithstanding the lack of direct pecuniary affect on their interests, appellants argue that they have an interest as a member of the public to access to public records and that interest, which is a right recognized in common law and under the First Amendment to the

Constitution, would meet the standing requirements.  In North Jersey Media Group Inc. v.

Ashcroft, 208 F.3d 198 (3d Cir. 2002) (in determining whether there was a First Amendment

right of access to deportation hearings, court applied a two-part test of experience and logic

which was articulated in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)

(recognizing a public right of access to criminal trials)), the United States Court of Appeals for

the Third Circuit reflected on the right of access and concluded that the First Amendment right

of access is not limited to criminal matters.  The court stated:

> [T]he First Amendment implicitly incorporates a right of access to civil
> trials.  Our conclusion rests on the finding that "the public's right of
> access to civil trials and records is as well established as that of criminal
> proceedings and records, . . . and . . . [a]s early as 1685 Sir John Hawles
> commented that open proceedings were necessary so that the truth may
> be discovered in civil as well as criminal matters.

Id. at 206-07 (quoting Publicker Industries, Inc. v. Cohen, 733 F.2d 1059 (3d Cir. 1984)).

The First Amendment right of public access to civil trials and records, however, is not

unlimited.  In Newark Morning Ledger Co., 260 F.3d 217 (3d Cir. 2001), the United States

Court of Appeals for the Third Circuit, in an appeal brought by a newspaper which sought to

unseal a motion filed in a contempt proceeding, held that access was properly precluded in that

case in order to permit the trial court to make a determination whether secret grand jury

information would be implicated.  The court found that the "right of access is not unlimited.

Under certain circumstances the right of public access may be outweighed by countervailing

principles."  Id. at 220-21.  The countervailing principle in Newark Morning Ledger Co. was

the need to protect grand jury secrecy.  Based upon that countervailing principle, the court

found that the lower court did not err in sealing various filings and motions pending

determination by the court where secret grand jury information was involved.

With respect to the common law right of public access, the United States Court of

Appeals for the Third Circuit in Republic of the Philippines v. Westinghouse Electric Corp.,

949 F.2d 653 (3d Cir. 1991), considered an appeal by two entities who requested a stay of a

district court order requiring the unsealing of certain material. That material had been

designated and produced under a protective order and the material was alleged to be

confidential. The court of appeals commented that the material had been discussed in open

court and in fact had been quoted in the hearing. There was also a transcript of the hearing

which was a matter of public record. Certain parties filed a motion to intervene requesting

modification of the previously entered protective order to permit, among other things, public

access to the material. The arguments of the intervenors were based upon the common law

right of access to judicial records and the First Amendment. The district court granted the

motion of the intervenors and that order was appealed.

The court of appeals recognized that "[t]he common law right of access is not limited to

evidence, but rather encompasses all 'judicial records and documents.'" Id. at 659 (quoting

United States v. Martin, 746 F.2d 964, 968 (3d Cir. 1984)). The court also recognized that

independent of the common law, the First Amendment "protects the public's right of access to

records of civil proceedings." Id. Nonetheless, the court reviewed only the common law right

of access. The court noted access to civil records promotes the interests of justice and prevents

the abuse of judicial power. Id. at 660-61. While recognizing the existence of the common

law right, the court found that the existence of the right is not dispositive because, as noted in

14

the past, "[j]ust as the right of access is firmly entrenched, so also is the correlative principle that the right of access . . . is not absolute.'" Id. at 662 (quoting Bank of America Nat'l Trust v. Hotel Rittenhouse, 800 F.2d 339, 344 (3d Cir. 1986)).  The appellant in Republic of the Philippines argued that due to the countervailing concern of confidentiality, the material should not be made public.  In light of the "confidential" information having already been openly discussed at a hearing, the court did not find that concern sufficiently strong to warrant a stay of the order unsealing the records.  The court also found that a strong public interest was present with respect to the disclosure of the material because the allegations in the material involved a United States corporation bribing a leader of a foreign country.  The court concluded that the district court did not abuse its discretion in unsealing the material at issue.

The United States Court of Appeals for the Second Circuit in Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24 (2d Cir. 1994), examined the right of public access to court records in the bankruptcy context.  In that case the district court affirmed the bankruptcy court's denial of a motion to modify a protective order that sealed certain documents relating to a commercial transaction.  The parties to the transaction had agreed that the transaction would be confidential and the debtor moved to seal the documents.  The bankruptcy court granted that motion and that order was appealed to the district court.  The district court affirmed that order based upon section 107(b) of the Bankruptcy Code.  On appeal to the court of appeals, the court discussed the common law right of access which it found to be rooted in the First Amendment.  "This policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." Id. at 26.

15

The court, however, recognized that the common law right of access is not unlimited.  "In limited circumstances, courts must deny access to judicial documents – generally where open inspection maybe used as a vehicle for improper purposes." <u>Id.</u> at 27 (recognizing improper purpose may be promoting public scandal and harm to a litigant's competitive standing).  The court commented that sealing records is something not to be undertaken lightly by a court and the court being requested to seal records must "insure that there really is an extraordinary circumstance or compelling need." <u>Id.</u> at 27.  The court of appeals recognized that section 107(b) specifically permits an exception for protection of confidential commercial information and held that the bankruptcy court did not err in sealing records relating to the commercial transaction.

In <u>Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)</u>, 191 B.R. 675 (Bankr. N.D. Ohio 1995), the bankruptcy court addressed the second exception contemplated by 11 U.S.C. § 107(b) with respect to protecting from disclosure in public records scandalous or defamatory matter.  The court noted that section 107 recognizes the common law right of public access subject to exceptions – confidential commercial information and scandalous or defamatory material.  "Because Congress enacted an express statutory scheme, issues concerning public disclosure of documents in bankruptcy cases should be resolved under § 107." <u>Id.</u> at 679.  The court found that it did not need to look to compelling reasons for balancing the interests of privacy and the public right of access because section 107 requires a court to protect from disclosure certain kinds of information.  The court found that the information requested to be disclosed in that case was scandalous or defamatory and made permanent an order sealing a complaint and certain other papers.  The scandalous

16

material allegedly involved untrue allegations of wrongdoing.  It is clear under section 107 that there are certain circumstances which require a court to protect from public access certain kinds of information.

This court, however, need not decide whether the implication of First Amendment rights meets the "aggrieved persons" standing test because the bankruptcy court did not deny appellants the right to access the information.  The bankruptcy court in essence reserved its decision on whether or not access would be granted.  The bankruptcy court did not intend to resolve the right of access issue by entering the Rule 2019 Order.  The bankruptcy court wanted to have the Rule 2019 statements filed and then, upon a filing of a motion as contemplated by the 2019 Order, the bankruptcy court would review the issue of access.  The record before this court does not reflect that any motion seeking access was filed by appellants. In the instant case, where appellants have not yet sought access or been denied access, they do not have standing as "aggrieved persons."  They have suffered no injury.  The bankruptcy court did not resolve issues relating to the right of access; rather it created a procedure to determine those issues at another time if a motion is filed seeking public access.  For purposes of standing, this court cannot find that appellants meet the "aggrieved persons" test.  The court finds appellants failed to show that the 2019 Order diminished their property, increased their burdens or impaired their rights.

## II.    Ripeness

Even if the implication of the constitutional right being asserted individually by appellants was sufficient to confer standing for appeal purposes, the matter is not ripe and would be dismissed on that alternative basis.

> Although discrete names have been given to the several nominate categories of justiciability, they are tied closely together.  Standing generates the most excitement, because it focuses directly on the question whether a particular interest or injury is adequate to invoke the protection of judicial decision.  Ripeness and mootness easily could be seen as the time dimensions of standing.  Each assumes that an asserted injury would be adequate; ripeness then asks whether an injury that has not yet happened is sufficiently likely to happen, and mootness asks whether an injury that has happened is too far beyond a useful remedy.

13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3531.12 at 50 (2d ed. 1984).  The justiciability connections between standing and ripeness may cause some confusion in determining which doctrine properly applies.  Here appellants have been denied standing because the injury alleged has not yet occurred – appellants have not been denied access.  The "anticipated injury is too remote" to promote standing.  Id. at 51.  The central concern in determining ripeness is whether the uncertainty or contingency of future events would as a matter of policy not warrant review.  A dispute is not ripe for judicial determination "'if it rests upon continent future events that may not occur as anticipated or indeed may not occur at all.'"  Wyatt, 385 F.3d at 806 (quoting Doe v. County of Centre, PA, 242 F.3d 437, 453 (3d Cir. 2001)); Philadelphia Fed'n of Teachers, 150 F.3d at 322-23.

As noted the doctrines of standing and ripeness are closely related theoretically and may be difficult to separate in practice.  Id. at § 3532.1 at 131.  On the record presently before

18

the court even if standing exists, the matter is not ripe.  The substance of the relief requested by

appellants is for access to the materials filed in connection with the Rule 2019 statements.

That right has not yet been denied.  The district court in Certain Underwriters also found that

the matter at issue there was not ripe for adjudication because, like here, any injury asserted by

those appellants was speculative.  327 B.R. at 559 n.1 (citing Pechlum v. City of York, 333

F.3d 429 (3d Cir. 2003) (requiring party to be genuinely aggrieved to establish ripeness)); see

13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND

PROCEDURE § 3532.3 at 159-60 (2 ed. 1984) ("not all First Amendment claims are ripe").

    The bankruptcy court in this case made clear that it was important to have the

statements filed and that the issue of access would be addressed if and when a party files a

proper motion.  The parties rather than appealing the matter should have filed a motion and

permitted the bankruptcy court to develop a record with respect to whether section 107 of the

Bankruptcy Code and the First Amendment and common law rights of public access mandate a

right of public access or whether countervailing concerns justify the continued protection of the

information.  If a motion is filed and briefed, the bankruptcy court, after notice and hearing,

may well conclude that information initially protected by the 2019 Order should be filed of

record for public access.  It is appropriate for the bankruptcy court to resolve this issue before

this court considers the matter.[4]

---

[4]When a matter has not been resolved by the lower court and there is a mechanism
provided for that issue to be raised, that issue should be resolved by the lower court in the first
instance.  Cf. Pechlum, 333 F.3d at 439-40 (even when a matter is ripe, it is appropriate for the
lower court to analyze the issue in the first instance).  Even if this court determined the matter
was ripe and that appellants had standing, the court would have remanded the matter for the
bankruptcy court to develop the record.

## Conclusion

On the record before this court, the court finds that appellants lack standing or in the alternative that the matter is not ripe.  The appeal shall be **DISMISSED**.  The clerk is directed to mark this case closed.

By the court,


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
U.S. District Judge

Dated: September 27, 2005

cc:      counsel of record